1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**
7              **DISTRICT OF NEVADA**
8
9   JAMES VAUGHN,
10          Petitioner,                    Case No. 2:08-CV-01235-KJD-(PAL)
11   vs.                                    **ORDER**
12   BRIAN WILLIAMS, et al.,
13          Respondents.
14

15          Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
16   (#7) and respondents' answer (#38).  The court finds that relief is not warranted, and the court
17   denies the petition (#7).
18          In the Eighth Judicial District Court of the State of Nevada, petitioner and his co-defendant
19   Ignacio Dealba were charged with conspiracy to commit robbery, robbery with the use of a deadly
20   weapon, and attempted murder with the use of a deadly weapon.[1]  Ex. 10 (#19).  The jury found
21   petitioner guilty of robbery with the use of a deadly weapon, and the jury found petitioner not guilty
22   of the other charges.  Ex. 29 (#19).  The prosecution then notified petitioner that it intended to seek
23   an adjudication of habitual criminality.  Ex. 30 (#20).  The trial court decided to adjudicate
24   petitioner as a habitual criminal.  The trial court sentenced petitioner to a minimum term of five
25   years and a maximum term of twenty years for being a habitual criminal pursuant to Nev. Rev. Stat.
26   § 207.010(1)(a), and the trial court imposed an equal and consecutive sentence for the use of a
27   ────────────
28          [1]Dealba also was charged with possession of a firearm by an ex-felon.  The criminal
     proceedings against Dealba are not otherwise relevant to this action.

deadly weapon pursuant to the version of Nev. Rev. Stat. § 193.165 that was in effect at the time.
Ex. 37 (#20).  This sentence was illegal, because a trial court may impose a sentence enhancement
for habitual criminality or for use of a deadly weapon, but a trial court may not impose both
enhancements simultaneously.  Odoms v. State, 714 P.2d 568, 572 (Nev. 1986).  Petitioner himself
was the first person to recognize the problem and to bring it to the court's attention at the sentencing
hearing. Ex. 35, pp. 15-16 (#20).  After an agreement by the parties, the trial court re-sentenced
petitioner to a minimum term of five years and a maximum term of twenty years for being a habitual
criminal.  Ex. 52 (#20).  Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 65
(#21).

Petitioner returned to the state district court.  He filed a post-conviction habeas corpus
petition. Ex. 76 (#21).  He also filed a motion to correct an illegal sentence.  Ex. 96 (#22).  The
district court denied both, and the Nevada Supreme Court affirmed in a consolidated order.  Ex. 112
(#22).  Petitioner also filed a motion for a new trial.  Ex. 93 (#22).  The district court denied this
motion, and the Nevada Supreme Court affirmed.  Ex. 116 (#22).

Petitioner then commenced this action.  The court dismissed part of ground 5 as procedurally
defaulted, and the court dismissed ground 8 because it was simply a placeholder with no allegations
of fact or claims that petitioner's custody violated the Constitution or the laws of the United States.
Order (#30).  Reasonable jurists would not find these conclusions to be debatable or wrong, and the
court will not issue a certificate of appealability on these grounds.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on
the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established Federal law, as determined by the
Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28
U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence presented in the State court
proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to" our clearly established law if it "applies a rule that
contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are
materially indistinguishable from a decision of this Court and nevertheless arrives at a result

-2-

different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions.  We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

[T]he range of reasonable judgment can depend in part on the nature of the relevant rule.   If a legal rule is specific, the range may be narrow.   Applications of the rule may be plainly correct or incorrect.   Other rules are more general, and their meaning must emerge in application over the course of time.   Applying a general standard to a specific case can demand a substantial element of judgment.   As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

The facts of this case are largely undisputed.  On June 7, 2005, Timothy Shalhoob, an off-duty sergeant of the Las Vegas Metropolitan Police Department, had just picked up food from a McDonald's drive through.  He saw two women walk in front of his truck, heard a scream, and turned his head to see one of the women struggling with an assailant, whom Shalhoob later identified as Dealba.  Dealba took $1,100 from the woman and ran to a red BMW that was parked nearby.  The BMW started to move out of its parking space.  Shalhoob retrieved his pistol and moved his truck to block the BMW.  The two vehicles came nose-to-nose, and Shalhoob saw the driver, whom Shalhoob later identified as petitioner.  Petitioner reversed the BMW back into the parking space.  Shalhoob pulled forward to block the BMW, rolled down the window, and identified himself as a police officer.  Petitioner evaded the block and drove away.  Shalhoob pursued.  Dealba reached through the sun roof of the BMW and fired several shots at Shalhoob; all missed.  Shalhoob pursued the BMW for some distance and, although he eventually lost the BMW in traffic, he did read the license plate number and gave it to the police dispatcher.

1    The motor vehicle records showed that license plate was issued to a red BMW, registered to

2    petitioner's mother.  The registered address was out of date, but police detectives found her current

3    address and waited there.  A few hours after the robbery, petitioner drove up to the home in the

4    BMW.  Police arrested him and advised him of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S.

5    436 (1966).  Petitioner agreed to speak.  Even before anybody asked him a question, he stated that

6    didn't know that Shalhoob was a police officer and that he did not shoot at anybody.  Over the

7    course of three statements, petitioner said that he and Dealba drove to the McDonald's, that he did

8    not know that Dealba intended to rob someone, but that he realized what Dealba did when Dealba

9    rushed back to the BMW.  Petitioner stated that after he eluded Shalhoob, he drove to Dealba's

10   apartment, where they had pizza and soda for lunch.  Petitioner then left to look for someone

11   elsewhere in town, and then he returned to his residence, where police arrested him.  Petitioner

12   stated that Dealba gave him $300 from the proceeds of the robbery for his part in it.[2]  A search of

13   the vehicle pursuant to a warrant revealed the $300.

14   Ground 1 is a claim of ineffective assistance of counsel.  "[T]he right to counsel is the right

15   to the effective assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 & n.14 (1970).

16   A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense

17   attorney's representation "fell below an objective standard of reasonableness," <u>Strickland v.</u>

18   <u>Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced

19   the defendant such that "there is a reasonable probability that, but for counsel's unprofessional

20   errors, the result of the proceeding would have been different," <u>id.</u> at 694.  "[T]here is no reason for

21   a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to

22   address both components of the inquiry if the defendant makes an insufficient showing on one."  <u>Id.</u>

23   at 697.

24   <u>Strickland</u> expressly declines to articulate specific guidelines for attorney performance

25   beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

26

27

28   [2]In his second statement, petitioner said that the money was from a workman's compensation claim, but in his third statement he admitted that Dealba gave him the money.

1    duty to advocate the defendant's cause, and the duty to communicate with the client over the course

2    of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

3    exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

4    such set of rules would interfere with the constitutionally protected independence of counsel and

5    restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

6         Review of an attorney's performance must be "highly deferential," and must adopt counsel's

7    perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

8    Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

9    conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

10   overcome the presumption that, under the circumstances, the challenged action 'might be considered

11   sound trial strategy.'"  Id. (citation omitted).

12        The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

13   proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

14   Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

15   below an objective standard of reasonableness alone is insufficient to warrant a finding of

16   ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

17   prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

18   but for the attorney's challenged conduct, the result of the proceeding in question would have been

19   different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

20   in the outcome."  Id.

21        If a state court applies the principles of Strickland to a claim of ineffective assistance of

22   counsel in a proceeding before that court, the petitioner must show that the state court applied

23   Strickland in an objectively unreasonable manner to gain federal habeas corpus relief.  Woodford v.

24   Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

25        Two of the claims in ground 1 are that counsel failed to file a motion to suppress and that

26   counsel did not investigate and use the victim's testimony that she did not identify petitioner in a

27   photographic line-up or at the crime scene.  On these claims, the Nevada Supreme Court held:

28

1

2

3

4

5

6

7

8

9

10

       First, appellant claimed that his trial counsel were ineffective for failing to properly represent petitioner.  Appellant claimed that trial counsel failed to file a motion to suppress the "gun et. al" [sic] on the basis that the female victim did not identify appellant in a line-up or at the crime scene and did not ever state that appellant had used a gun or was involved in the robbery.  Appellant failed to demonstrate that his trial counsel were deficient or that he was prejudiced.  First, appellant failed to sufficiently identify the evidence or statements that should have been suppressed.  Although appellant indicated that "gun et. al" [sic] should have been suppressed, notably, a gun was never recovered in the instant case.  Appellant was read his <u>Miranda</u> rights immediately after being pulled over and exiting the car and failed to demonstrate that any of his statements to the police should have been suppressed.  The money recovered from appellant's vehicle was recovered pursuant to a search based upon a warrant, and appellant failed to demonstrate any defects in the search.  Finally, although the female victim did not identify appellant as the driver of the getaway vehicle, the off-duty police officer who witnessed the robbery and engaged in pursuit of appellant positively identified appellant as the driver of the vehicle.  Thus, appellant failed to demonstrate that a motion to suppress was meritorious and that there was a reasonable likelihood that excluding evidence would have altered the outcome of the trial.  Therefore, we conclude that the district court did not err in denying this claim.

11   Ex. 112, pp. 2-3 (#22) (footnotes omitted).  Just as with the state petition, petitioner does not allege

12   in his federal petition what evidence should have been suppressed, other than a gun that never was

13   recovered.  Additionally, as the facts of the case show, the police complied with all the rules for

14   collecting evidence.  They gave petitioner the warnings required by <u>Miranda</u>, petitioner agreed to

15   speak with them, and they obtained a search warrant before they searched the car.  There was

16   nothing for counsel to move to suppress.

17          The lack of identification by the victim of the robbery was irrelevant, because Shalhoob also

18   was present at the robbery and did identify petitioner, and because petitioner did not dispute at trial

19   that he drove the car after the robbery.  Petitioner's defense was mere presence:  He had no idea that

20   Dealba intended to commit a robbery, and then he tried to get away after the robbery occurred.  <u>See</u>

21   Ex. 27, pp. 79-89 (#19).  The victim's inability to identify petitioner made no difference to mere-

22   presence defense.  Also, as the Nevada Supreme Court noted, other direct and circumstantial

23   evidence tied petitioner strongly to the crime.  Even if petitioner did not know that Dealba intended

24   to commit robbery when he drove Dealba to the gas station, he fled from the scene of the robbery

25   with Dealba, went to Dealba's apartment, ate a meal with Dealba, and accepted some of the money

26   that Dealba stole from the victim.  Those subsequent actions are circumstantial evidence that

27   petitioner aided and abetted the robbery, not that petitioner was merely present at the robbery.

28

1    Furthermore, the record does not support petitioner's argument that counsel did not utilize

2    the testimony of the victim in petitioner's defense.  Counsel argued that she was not a reliable

3    witness because her memories of the event were vague and inaccurate. Ex. 27, pp. 81-82 (#19).

4    Although counsel did not note specifically that she could not identify petitioner, counsel did note

5    that she was "not the person who perceived what happened the best."  Id., p. 82.

6    Also in ground 1, petitioner claimed that counsel did not investigate information from the

7    police at the crime scene, nor did counsel use an investigator to interview potential witnesses. On

8    this claim, the Nevada Supreme Court held:

9    Second, appellant claimed that his trial counsel were ineffective for failing to perform proper
     and adequate investigation, interview or subpoena witnesses in order to establish a defense
10   to the charges.  Appellant failed to demonstrate that his trial counsel's performance was
     deficient or that he was prejudiced.  "An attorney must make reasonable investigations or a
11   reasonable decision that particular investigations are unnecessary."  Appellant failed to
     specifically identify the information or witnesses his counsel should have discovered had
12   trial counsel conducted further investigation into the case.  Thus, appellant failed to
     demonstrate that there was a reasonable likelihood of a different result.  Therefore, we
13   conclude that the district court did not err in denying this claim.

14   Ex. 112, pp. 3-4 (#22).  Similarly, in the federal petition, petitioner does not allege what counsel

15   should have investigated, and thus he failed to demonstrate any prejudice.  The Nevada Supreme

16   Court applied Strickland reasonably.  28 U.S.C. § 2254(d)(1).

17   Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

18   will not issue a certificate of appealability on ground 1.

19   Ground 2 is a claim of ineffective assistance of counsel.  Petitioner alleges that trial counsel

20   told him that two jurors were confused over the instruction on the use of a deadly weapon.  The

21   jurors said that but for that instruction, they would not have found petitioner guilty of the use of a

22   deadly weapon.  Petitioner claims that trial counsel failed to mention this to appellate counsel, and

23   that appellate counsel failed to raise the issue on appeal.

24   The record belies petitioner's claim.  Appellate counsel did raise the issue of the jury

25   instruction on whether an accomplice can be held liable for the use of a deadly weapon.  Ex. 60, pp.

26   9-10 (#21).  The Nevada Supreme Court determined that the error was harmless because of

27   petitioner's "active role in the robbery as a getaway driver . . . ." Ex. 65, p. 3 (#21).  In petitioner's

28   habeas corpus appeal, the Nevada Supreme Court determined that petitioner could not demonstrate

1  prejudice because petitioner ultimately was not penalized for the use of a deadly weapon, because

2  petitioner was sentenced as a habitual criminal instead.  Ex. 112, p. 5 (#22).

3       On this issue, the Nevada Supreme Court held:

4      Third, appellant claimed that trial counsel was ineffective failing [sic] to object to the State's
    deadly weapon enhancement jury instruction.  Jury Instruction 9 read, "An unarmed aider

5      and abettor must have knowledge that a weapon was used in the commission of the crime in
    order to be held liable for the 'use' of a deadly weapon."  Appellant further claimed that trial

6      counsel learned shortly after trial that two of the jurors expressed confusion regarding this
    instruction and would have returned a not guilty verdict had they been provided with a more

7      accurate jury instruction.  Appellant claimed that his trial counsel failed to deliver this
    information to his appellate counsel.

8
    Appellant failed to demonstrate that his trial counsel's performance was deficient or that he
9      was prejudiced.  Trial counsel proffered the following jury instruction that included language
    about constructive possession for the unarmed aider and abettor:
10
        An unarmed defendant, charged as an aider or abettor or co-conspirator, cannot be
11          held criminally responsible for use of a deadly weapon unless he has actual or
        constructive control over the deadly weapon.  An unarmed defendant does not have
12          constructive control over a weapon unless the State proves he had knowledge the
        armed offender was armed and he had the ability to exercise control over the firearm.
13
    The State objected to the jury instruction, and the district court sustained the objection.  Trial
14      counsel then offered the language that was included in jury instruction 9, which the district
    court permitted.  <u>Appellate counsel argued on direct appeal that the district court had erred in</u>
15      <u>the armed aider and abettor deadly weapon enhancement jury instruction because the jury</u>
    <u>instruction failed to inform the jury that the unarmed aider and abettor had to have the ability</u>
16      <u>to exercise control over the weapon.</u>  This court determined that the jury instruction was
    erroneous because it did not include the required element that the unarmed aider and abettor
17      have the ability to control the weapon in addition to the knowledge element.  However, this
    court concluded that it was persuaded beyond a reasonable doubt that the verdict would have
18      been the same absent the erroneous instruction given the appellant's active role in the
    robbery as a getaway driver.  Because this court has already determined that there would not
19      have been a different outcome absent the erroneous jury instruction, appellant failed to
    demonstrate that he was prejudiced in the instant case.  Additionally, because appellant is
20      not serving an enhancement for the use of the deadly weapon, appellant cannot demonstrate
    any prejudice in the instant case.  Finally, we note that any juror affidavits or testimony
21      regarding their confusion would not have been admissible.  Therefore, we conclude that the
    district court did not err in denying this claim.

22

23  Ex. 112, pp. 4-6 (#22) (emphasis added).  Counsel did what petitioner alleges counsel should have

24  done.  The Nevada Supreme Court reasonably applied <u>Strickland</u>, and ground 2 is without merit.

25       Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

26  will not issue a certificate of appealability on ground 2.

27       Ground 3 contains three claims of ineffective assistance of counsel.  First, petitioner argues

28  that counsel should have requested an instruction to the jury on an alibi.  As noted above,

-8-

1  petitioner's theory of defense was that he gave Dealba a ride to the store, with no knowledge of

2  Dealba's intent to rob the store or Dealba's possession of a gun.  On this issue, the Nevada Supreme

3  Court held:

4              Fourth, appellant claimed that his trial counsel was ineffective for failing to request an alibi
            jury instruction.  Appellant claimed that because he had no knowledge or intent to commit
5            robbery and just gave the codefendant a ride to the store that he had an alibi for the offense.
            Appellant failed to demonstrate that his trial counsel's performance was deficient or that he
6            was prejudiced.  An "alibi" is defined as being "elsewhere . . . in another place" at the time
            the crime was committed.  Appellant's theory of defense was that he was merely present at
7            the scene of the crime.  Appellant was not entitled to an alibi jury instruction because he did
            not present an alibi defense and there was no evidence to support an alibi claim.
8            Therefore, we conclude that the district court did not err in denying this claim.

9  Ex. 112, p. 6 (#22) (footnotes omitted).  This claim is based upon petitioner's misunderstanding of

10 the word "alibi."  The Nevada Supreme Court's disposition of the claim was a reasonable

11 application of Strickland.

12         Second, petitioner alleges that the charge of conspiracy was dismissed because of

13 insufficient evidence.  He argues that counsel should have argued that the dismissal of the charge to

14 the jury as evidence that there was insufficient evidence that petitioner aided and abetted in the

15 robbery.  Petitioner misunderstands what happened at trial.  The trial court did not dismiss the

16 counts of conspiracy and attempted murder with the use of a deadly weapon.  The jury acquitted

17 petitioner of those charges after counsel argued to them that the prosecution had not met its burden

18 of proof.  Ex. 27, pp. 85-88 (#19).  In effect, counsel did what petitioner claims that counsel should

19 have done.  The jury did not accept all of counsel's argument, because the jury found petitioner

20 guilty of robbery with the use of a deadly weapon, but that does not signify deficient performance.

21 This part of ground 3 is without merit.

22         Third, petitioner claims that counsel did not argue to the jury that the victim did not identify

23 petitioner, let alone see him with a gun.  This claim duplicates a similar claim in ground 1, and it is

24 without merit for the same reason.

25         Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

26 will not issue a certificate of appealability on ground 3.

27         In ground 4, petitioner argues that the trial court gave an incorrect instruction on when an

28 aider and abettor can be held liable for the use of a deadly weapon, and petitioner claims that this

1  was due to bias against him.  Petitioner raised on direct appeal the issue whether the instruction was

2  incorrect.  He did not claim on direct appeal that the trial court rejected the first proposed instruction

3  because of bias.  The court agrees with respondents that petitioner has not proven any bias.  The

4  prosecutor and defense counsel argued over what the correct instruction was, and the trial judge

5  made her decision.  Ex. 26, pp. 56-60 (#13).  The Nevada Supreme Court held that the instruction

6  given to the jury was erroneous, but an error in jury instructions is not itself evidence of bias.

7  Nothing in the transcript indicates that the judge held any bias against petitioner.

8        On the issue of whether the instruction was correct, the Nevada Supreme Court held:

9        Second, Vaughn argues that the jury instruction defining the use of a deadly weapon for an
       unarmed aider and abettor was erroneous.  The jury instruction stated that "[a]n unarmed
10      aider and abettor must have knowledge that a weapon was used in the crime in order to be
       held liable for the 'use' of a deadly weapon."  Vaughn argues that the jury instruction failed
11      to include a necessary element in support of the deadly weapon enhancement—that the jury
       find that Vaughn had the ability to exercise control over the firearm.  We conclude that the
12      error is harmless beyond a reasonable doubt.

13      It is well established that an unarmed aider and abettor may be found guilty of using a deadly
       weapon if the unarmed participant has (1) knowledge that the principal offender is armed,
14      and (2) the ability to exercise control over the deadly weapon.  This court has held that the
       control requirement of this test is met where the defendant had the ability to verbally deter
15      the armed codefendant from using the weapon.

16      In this case, the jury instruction was erroneous because it did not include the required
       element that Vaughn have the ability to control the weapon.  However, in light of Vaughn's
17      active role in the robbery as a getaway driver, we are persuaded beyond a reasonable doubt
       that the verdict would have been the same absent the erroneous instruction.

18

19  Ex. 65, pp. 2-3 (#21) (footnotes omitted).  The Nevada Supreme Court correctly identified the

20  governing principle of federal law, "that before a federal constitutional error can be held harmless,

21  the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

22  Chapman v. California, 386 U.S. 18, 24 (1967).

23        In determining on federal habeas corpus whether an error is harmless, this court does not

24  determine pursuant to 28 U.S.C. § 2254(d)(1) whether the Nevada Supreme Court applied Chapman

25  reasonably.  Instead, this court uses a more forgiving standard of harmless-error review.  Fry v.

26  Pliler, 551 U.S. 112, 119-20 (2007); Pulido v. Chrones, 629 F.3d 1007, 1012.  In federal habeas

27  corpus, an error is harmless unless it "'had substantial and injurious effect or influence in

28  determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 631, 638 (1993) (quoting

1    Kotteakos v. United States, 328 U.S. 750, 776 (1946).  "Under this standard, habeas petitioners may

2    obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based

3    on trial error unless they can establish that it resulted in 'actual prejudice.'"  Brecht, 507 U.S. at 637.

4           Petitioner did not suffer actual prejudice from the erroneous instruction or from any bias that

5    the district court might have held against petitioner.  Not only did the jury find him guilty of using a

6    deadly weapon in the course of the robbery, but also the trial judge determined that he was a

7    habitual criminal.  At first, the trial court sentenced petitioner as a habitual criminal, pursuant to

8    Nev. Rev. Stat. § 207.010, and then added an equal and consecutive term for the use of a deadly

9    weapon, pursuant to Nev. Rev. Stat. § 193.165.  Ex. 37 (#20).  That sentence was erroneous because

10   a trial court may not enhance a sentence for both habitual criminality and for the use of a deadly

11   weapon.  Odoms v. State, 714 P.2d 568, 572 (Nev. 1986).  After the error was brought to the trial

12   court's attention, that court then sentenced petitioner as a habitual criminal only.  Ex. 52 (#20).

13   Ultimately, petitioner was not sentenced for the use of a deadly weapon.  Even if the instruction was

14   erroneous, he did not suffer any actual prejudice, and the error was harmless.

15          Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

16   will not issue a certificate of appealability on ground 4.

17          The court dismissed three claims in ground 5 because they were procedurally defaulted.

18   Order (#30).  Two claims of ineffective assistance of counsel remain.  First, petitioner argues that

19   trial counsel was ineffective because he was not prepared to challenge the sufficiency of the notice

20   to seek adjudication of Petitioner as a habitual offender.  The Nevada Supreme Court held:

21             Sixth, appellant claimed that his trial counsel was ineffective for failing to challenge his
               habitual criminal adjudication on the ground that he was not provided sufficient notice.
22             Appellant failed to demonstrate that his trial counsel's performance was deficient or that he
               was prejudiced.  The notice of habitual criminality was filed in the district court on February
23             13, 2006, well in advance of the sentencing hearing.  Therefore, we conclude that the district
               court did not err in denying this claim.
24

25   Ex. 112, p. 7 (#22).  The law requires that when the prosecution files a notice of habitual criminality

26   after the jury's verdict on the primary offense, the sentencing must occur at least fifteen days after

27   the filing of the notice.  Nev. Rev. Stat. § 207.016(2).  As the Nevada Supreme Court noted, the

28   notice of habitual criminality was filed on February 13, 2006.  Ex. 30 (#20).  The sentencing hearing

-11-

occurred on April 6, 2006.  Ex. 35 (#20).  Petitioner received the notice with sufficient time before sentencing.  An objection would have been fruitless.  The Nevada Supreme Court reasonably applied <u>Strickland</u>.  28 U.S.C. § 2254(d).

Second, petitioner argues that appellate counsel was ineffective because he failed to argue on direct appeal that the district court abused its discretion in adjudicating Petitioner as a habitual offender.  Adjudication of a person as a habitual criminal is not automatic upon finding the requisite number of prior convictions; it is a matter of discretion for the trial judge.  <u>Hughes v. State</u>, 996 P.2d 890 (Nev.2000) (per curiam).  The trial judge heard both parties out and gave her reasons why she was adjudicating petitioner as a habitual offender.  Ex. 35, p. 14 (#20).  Petitioner gives no reasons why the judge abused her discretion, and the court can find none.  Petitioner has shown neither deficient performance by counsel nor actual prejudice.

Reasonable jurists would not find these conclusions to be debatable or wrong, and the court will not issue a certificate of appealability on ground 5.

Ground 6 contains two claims of ineffective assistance of counsel.  First, petitioner alleges that the attorney who represented him at trial, Andrea Luem, met him for the first time on the day of the trial.  Petitioner claims that she was not prepared for trial because she never spoke with petitioner.  On this issue, the Nevada Supreme Court held:

> Fifth, appellant claimed that his trial counsel were ineffective for failing to consult with him and visit in order to prepare a defense strategy.  Appellant failed to demonstrate that he was prejudiced.  Appellant failed to indicate how further consultation and visits would have had a reasonable probability of altering the outcome of the trial.  Therefore, we conclude that the district court did not err in denying this claim.

Ex. 112, p. 7 (#22) (footnote omitted).  Likewise, in the federal petition (#7), petitioner does not allege how consultation and visits would have altered the outcome of the trial.  The only indication in the petition that petitioner wanted to pursue a different defense was in ground 3, and that is based upon petitioner's misunderstanding of the word "alibi."  The Nevada Supreme Court reasonably applied <u>Strickland</u>.  28 U.S.C. § 2254(d)(1).

Second, Counsel was ineffective for allowing in-court identification of petitioner at the preliminary hearing.  On this issue, the Nevada Supreme Court held:

1
2
3
4
5
6
7

Seventh, appellant claimed that his trial counsel was ineffective for allowing the victim of the robbery identify [sic] him at the preliminary hearing.  He claimed that it was unfair as he was the only black man in a county jail uniform at the hearing and he was not identified in a line-up by the robbery victim.  Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced.  The victim of the robbery did not identify appellant at the preliminary hearing.  The off-duty police officer who witnessed the robbery positively identified appellant at the preliminary hearing.  The fact that the robbery victim could not identify appellant in a line-up had no bearing upon whether the witness could identify appellant.  The off-duty police officer testified at trial that he made eye contact with appellant when he attempted to block appellant's vehicle from leaving the parking space.  Appellant did not demonstrate that his appearance in a county jail uniform during the preliminary hearing warranted any relief.  Therefore, we conclude that the district court did not err in denying this claim.

8   Ex. 112, pp. 7-8 (#22) (footnote omitted).  In addition to the Nevada Supreme Court's reasons, other

9   evidence made a lack of objection on this issue non-prejudicial.  First, Shalhoob reported the license

10  plate of the getaway vehicle, and the vehicle was found to be registered to petitioner's mother.

11  Police waited by the known address of petitioner's mother, and they saw petitioner drive up in that

12  same vehicle.  Shalhoob went to that location, and he immediately identified petitioner as the driver.

13  Petitioner, after being advised of his rights, admitted that he drove the vehicle during and after the

14  robbery.  Furthermore, the jury never was informed that Shalhoob had identified petitioner at the

15  preliminary hearing.  The identification of petitioner at the preliminary hearing had no effect upon

16  the jury's finding of guilt.  The Nevada Supreme Court reasonably applied Strickland.  28 U.S.C.

17  § 2254(d)(1).

18       Reasonable jurists would not find these conclusions to be debatable or wrong, and the court

19  will not issue a certificate of appealability on ground 6.

20       Ground 7 repeats the claim in ground 1 that counsel should have filed a motion to suppress,

21  Petitioner bases this claim upon Shalhoob's testimony that Dealba, not petitioner, shot at him, and

22  the victim's testimony that petitioner himself never pointed a gun at her.  As with ground 1,

23  petitioner does not allege what evidence counsel should have moved to suppress.  Ground 7 is

24  without merit for the same reason that ground 1 is without merit.  The court will not issue a

25  certificate of appealability for ground 7.

26  ///

27  ///

28  ///

1         IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28

2  U.S.C. § 2254 (#7) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

3         IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

4            DATED: August 11, 2011

_____
KENT J. DAWSON
United States District Judge

-14-